LDA

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **COLLABORATION TECHNOLOGIES, INC.** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **Vs.** | ) | **C.A. # 2008-** 165 L |
| | ) | **JURY TRIAL** |
| **CAPEWELL COMPONENTS CO., LLC.** | ) | **DEMANDED** |
| | ) | |
| **Defendant** | ) | CA 08 165 ML |

## VERIFIED COMPLAINT

### Parties

**1) The Plaintiff, Collaboration Technologies, Inc. (hereafter, "CTI" or "the plaintiff"), is a Rhode Island corporation with its principal place of business located in the Quonset Business Park area of the Town of North Kingstown, State of Rhode Island.**

**2) The Defendant, Capewell Components Co., LLC., upon information and belief, is a Connecticut limited liability company with its principal place of business located at 105 Nutmeg Road South, South Windsor, Connecticut. At all times relevant hereto, the Defendant also maintained a place of business in the Quonset Business Park area of the Town of North Kingstown, State of Rhode Island. Said Defendant is not registered with the Rhode Island Secretary of State.**

### Jurisdictional/Venue Statement

**3) This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a) in that the matter in controversy exceeds the sum or**

**value of $75,000.00, exclusive of interest and costs, and CTI and the defendant are citizens of different states.**

**4) Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391(a) inasmuch as the defendant, a company, has an office and employees (currently and at all times relevant hereto) located in this district, is thus deemed to reside in this district and is subject to personal jurisdiction of this Court at the time of commencement of this action.**

**Facts Common to all Counts**

**5) CTI, incorporated in Rhode Island in 2000, was formed primarily to develop technical software used to support war fighters by way of sophisticated collaboration technology.**

**6) Following years of research and development, mostly if not entirely undertaken by the principal of CTI, Joshua Trainer, CTI's flagship software product (hereafter, "the Software") became ready for marketing and sales.**

**7) On or about April 7, 2005, the defendant announced a "partnership" with CTI to distribute its mission planning system (the Software). According to the announcement, the relationship with CTI culminated with a long-term strategic partnership agreement for the defendant's exclusive right to distribute the Software internationally.**

**8) CTI chose to "partner" with the defendant because of its long history of manufacturing components for the military and defense industry throughout the world and, in particular, its world-wide sales and marketing capabilities and its**

**expertise and know-how navigating laws and regulations governing the exportation of military wares to foreign entities.**

**9) Eventually, on or about February 6, 2006, CTI and the defendant (hereafter, "the Parties") entered into and executed a "Sales and Marketing Representative Agreement" (hereafter, "the Agreement"), a true and accurate copy of which is attached hereto and incorporated herein by reference as Exhibit A.**

**10) Pursuant to the Agreement,**

**a) the defendant was appointed as CTI's sales and marketing representative for the Software with exclusive international rights and limited U.S. rights;**

**b) the initial term is for four (4) years with an option to extend for one year;**

**c) either of the Parties can terminate the Agreement for cause with ninety (90) days written notice to the other (with cause being defined as, among other things, the defendant's failure in year 2 (2/6/07-2/6/08) to sell at least 500 Software licenses); and**

**d) in any legal proceeding to enforce or interpret the terms of the Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs and necessary disbursements, in addition to any other relief to which it may be entitled.**

**11) Pursuant to the Agreement, "[r]esponsibility for compliance with the United States Department of State International Traffic in Arms Regulations (22CFR Parts 120-130) and any other United States export controls shall lie solely with CAPEWELL [the defendant] ... [who] shall be responsible for coordinating**

**and submitting the application for any necessary licenses for the export of technical data and classified defense articles."**

**12) Further pursuant to the Agreement, the defendant is required to "contribute on an annual basis an amount of not less than $US50,000 towards sales and marketing efforts ... including any amounts paid to CTI for sales and marketing support."**

**13) In or about May 2006, the Australian Government Department of Defence (hereafter, "A-DOD") representatives expressed their initial interest in the Software.**

**14) Thereafter, pursuant to the Agreement, CTI and the defendant collaborated on efforts to secure a purchase order from A-DOD including when, at the end of October 2007, CTI conducted on-site testing and evaluation of the Software in Australia for A-DOD. CTI performed these tasks for A-DOD on-site in reliance upon the defendant's affirmative representations that all export licenses and applicable laws and regulations were obtained/satisfied by the defendant as called for in the Agreement.**

**15) Thereafter, CTI issued various invoices (hereafter, "the Invoices") to the defendant for CTI's sales and marketing efforts, giving the defendant credit for amounts previously owed to it by CTI. True and accurate copies of the invoice and invoices summary are attached hereto and incorporated herein by reference as Exhibits B and C. The total net amount due and owing to CTI under the Invoices is $9,060.73.**

**16) On or about December 7, 2007, in response to A-DOD's Request for Quote, the defendant issued a Quotation for 30 Software licenses for a total sum of $390,800.00.**

**17) The Software licenses required by A-DOD are not simply pre-packaged CD's or DVD's; many months of technical development as well as other third-party software are necessary to meet the requirements of A-DOD.**

**18) Upon its receipt of the Quotation, CTI advised the defendant that payments from A-DOD would have to be based upon a schedule based on functionality milestones for the Software development. CTI also advised the defendant that payments from A-DOD would have to support up-front costs and expenses required by CTI to obtain necessary third-party software.**

**19) Finally, after years of research, development and marketing efforts, CTI's first major break came when A-DOD issued a purchase order dated December 19, 2007 (hereafter, "the A-DOD P.O.") for 30 Software licenses for the sum of $390,800.00. A true and accurate copy of the A-DOD P.O. is attached hereto and incorporated herein by reference as Exhibit D. In short, A-DOD became the critically important "launch customer" for CTI; the A-DOD P.O. also has great significance for the potential sale by CTI of hundreds of additional Software licenses to A-DOD and, potentially, thousands of additional licenses worldwide.**

**20) That same date, the defendant advised CTI that A-DOD sent through "the contract" as negotiated and the defendant would be signing it that day. The defendant exclaimed to CTI: we "are off and running on our first real adventure."**

**21) On December 20, 2007, the defendant signed an Acknowledgement and Acceptance of receipt of the A-DOD P.O. (Exhibit D)**

**22) Thereafter, CTI increased its efforts and resources so as timely to execute upon the A-DOD P.O. and develop the Software ordered by A-DOD.**

**23) With a signed, accepted and acknowledged purchase order in hand from A-DOD, the defendant in turn issued upon CTI a purchase order (#330803) for the 30 Software licenses (hereafter, as revised, "the CTI P.O."). The CTI P.O. essentially mirrors the deliverables called for in the A-DOD P.O.**

**24) Under the CTI P.O., the defendant is required to pay CTI the sum of $245,800. The difference in amounts between the A-DOD P.O. and the CTI P.O. represents income to the defendant pursuant to the Agreement for its efforts and participation in securing the A-DOD P.O. and, thereafter, executing upon said purchase order.**

**25) In response to CTI's stated concerns that the CTI P.O. did not reflect the requirements in the original CTI quote and CTI's RFQ response document, the defendant issued to CTI a revised purchase order. A true and accurate copy of the CTI P.O. (as revised) is attached hereto and incorporated herein by reference as Exhibit E.**

**26) CTI promptly provided the defendant written acknowledgment and acceptance of the CTI P.O. and, on or about the same date, issued an invoice (#2008247) to the defendant in the amount of $110,000.00 representing the initial progress payment. True and accurate copies of said documents are attached hereto and incorporated herein by reference as Exhibit F.**

27) On March 8, 2008, in accordance with the purchase order, CTI transmitted to the defendant the first of the deliverables. The defendant promptly acknowledged the transmission and requested CTI's invoice "asap".

28) Despite repeated requests by CTI, to date, the defendant has failed and refused to pay the Invoices. The net total of the Invoices due and owing to CTI is $9,060.73.

29) The defendant has failed and refused to pay to CTI the sum due and owing pursuant to CTI's invoice dated March 7, 2008, in the sum of $110,000.00 for deliverables and third-party software called for by the CTI P.O.

30) By correspondence dated April 14, 2008, the defendant advised CTI that it was terminating the Agreement effective immediately and that it expected to terminate both the A-DOD P.O. and the CTI P.O. A true and accurate copy of said correspondence is attached hereto and incorporated herein by reference as Exhibit G.

31) By response dated April 16, CTI reminded the defendant of the Agreement's ninety (90) day termination notice requirement and offered to treat the April 14 letter as such notice, meaning that the Agreement would not terminate until July 14, 2008. CTI also asked the defendant not to speak to A-DOD about the defendant's termination of the Agreement until such time as CTI and the defendant had a meeting to discuss the matter. In that letter, CTI repeatedly emphasized the importance of preserving the purchase orders for the Software sales to A-DOD and not jeopardizing the critical relationship with A-DOD. CTI requested an

**immediate meeting with the defendant. A true and accurate copy of said response is attached hereto and incorporated herein by reference as Exhibit H.**

**32) As of April 21, CTI still had not received from the defendant a response to CTI's letters of April 11 (attorney demand) or April 16 or a response to other repeated requests for information and/or meetings.**

**33) Because of the actions and/or omissions of the defendant, CTI cancelled an April 23 teleconference with A-DOD that had been scheduled to discuss the status of its purchase order and, particularly, the next major milestone of deliverables (Alpha demonstration) due to A-DOD. Typically the defendant and CTI would collaborate on these efforts and be jointly involved in the presentation to A-DOD.**

**34) CTI once again requested that the defendant participate in the communications with A-DOD and cooperate with CTI in its continuing efforts timely to execute the deliverables under the CTI P.O. The defendant has failed and refused to cooperate with CTI in its efforts in this regard.**

**35) Moreover, in correspondence dated April 24, the defendant advised the Australian Ministry of Defence (A-DOD) System Manager (Mission Planning Systems) that it (the defendant) "will not be able to deliver the goods and services ordered" in the A-DOD P.O. "due to a recent company decision to no longer support this product line." The defendant also asked A-DOD to cancel its purchase order and notified A-DOD that it was canceling its invoice apparently issued by the defendant on February 20, 2008, in the amount of $130,440.00. A true and accurate**

**copy of the April 24 letter is attached hereto and incorporated herein by reference as Exhibit I.**

**36) On March 24, 2008, the U.S. State Department notified the defendant that its export license application was voided and was being returned without action. The defendant failed to apprise CTI of this important fact until April 28, 2008. Meanwhile CTI was preparing for a Software demonstration to A-DOD scheduled for April 30 as called for in the CTI P.O.**

**37) At all times relevant hereto, CTI has been ready, willing and able to perform its obligations under the CTI P.O. and continues to develop the deliverables called for in said purchase order.**

**<u>Count 1</u>**
**Breach of Contract**

**38) The plaintiff hereby incorporates above paragraphs numbered 1 through 37 inclusive as if fully set forth and realleged herein.**

**39) The actions and/or omissions of the defendant as set forth hereinabove are in breach of the Agreement and constitute a breach of contract.**

**40) As a result of the defendant's breach of the Agreement, CTI has suffered and will continue to suffer serious damages.**

**WHEREFORE, CTI demands that this Honorable Court enter judgment in its favor against the defendant in a sum sufficient to confer jurisdiction upon this Court, for its attorneys fees, costs and expenses, for compensatory and/or punitive damages and for such other and further relief as this Court deems just and proper.**

**Count 2**
**Breach of Contract**

**41) The plaintiff hereby incorporates above paragraphs numbered 1 through 37 inclusive as if fully set forth and realleged herein.**

**42) The actions and/or omissions of the defendant as set forth hereinabove are in breach of the CTI P.O. and constitute a breach of contract.**

**43) As a result of the defendant's breach of the CTI P.O., CTI has suffered and will continue to suffer serious damages.**

**WHEREFORE, CTI demands that this Honorable Court enter judgment in its favor against the defendant in a sum sufficient to confer jurisdiction upon this Court, for its attorneys fees, costs and expenses, for compensatory and/or punitive damages and for such other and further relief as this Court deems just and proper.**

**Count 3**
**Breach of Contract**

**44) The plaintiff hereby incorporates above paragraphs numbered 1 through 37 inclusive as if fully set forth and realleged herein.**

**45) CTI is an intended beneficiary of the contract between the defendant and A-DOD.**

**46) The actions and/or omissions of the defendant as set forth hereinabove are in breach of the A-DOD P.O. and constitute a breach of contract.**

**47) As a result of the defendant's breach of the CTI P.O., CTI has suffered and will continue to suffer serious damages.**

**WHEREFORE, CTI demands that this Honorable Court enter judgment in its favor against the defendant in a sum sufficient to confer jurisdiction upon this Court, for its attorneys fees, costs and expenses, for compensatory and/or punitive damages and for such other and further relief as this Court deems just and proper.**

**Count 4**
**Tortious Interference**

**48) The plaintiff hereby incorporates above paragraphs numbered 1 through 37 inclusive as if fully set forth and realleged herein.**

**49) By its actions and/or omissions as set forth hereinabove, the defendant has intentionally interfered with the contractual relations between CTI and A-DOD.**

**50) As a result, CTI has suffered and will continue to suffer serious damages.**

**Count 5**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**51) The plaintiff hereby incorporates above paragraphs numbered 1 through 37 inclusive as if fully set forth and realleged herein.**

**52) The defendant's actions and/or omissions as set forth hereinabove are in breach of the implied covenant of good faith and fair dealing.**

**53) As a result of the defendant's breach of the implied covenant of good faith and fair dealing, CTI has suffered and will continue to suffer serious damages.**

**WHEREFORE, CTI demands that this Honorable Court enter judgment in its favor against the defendant in a sum sufficient to confer jurisdiction upon this**

**Court, for its attorneys fees, costs and expenses, for compensatory and/or punitive damages and for such other and further relief as this Court deems just and proper.**

**The undersigned hereby verifies that the within facts are true and accurate**

**Joshua Trainer, President**
**Collaboration Technologies, Inc.**

**COLLABORATION TECHNOLOGIES, INC.**
**By its attorneys,**

**Brockmann & Associates, Ltd.**

**By:**

**Peter J. Brockmann, Esq. #4355**
**77 Narragansett Avenue**
**Jamestown, Rhode Island 02835**
**(401) 423-1969; fax: (401) 633-6143**
**pjb@brocklaw.net**