# EXHIBIT A

Sales and Marketing Representative Agreement

# SALES AND MARKETING REPRESENTATIVE AGREEMENT

Between

CAPEWELL COMPONENTS CO., LLC

And

COLLABORATION TECHNOLOGIES, INC

# Sales and Marketing Representative Agreement

This Sales and Marketing Representative Agreement is entered into as of February 6, 2006 (Hereinafter "Effective Date") between CAPEWELL COMPONENTS CO., LLC (Hereinafter CAPEWELL) a Connecticut corporation located at 105 Nutmeg Road, South Windsor, CT 06074, and COLLABORATION TECHNOLOGIES INCORPORATED (Hereinafter CTI), a Rhode Island corporation located at 138 Laurel Ridge Lane, North Kingstown, RI 02852.

In consideration of the mutual obligations set forth in this Agreement, CTI and CAPEWELL agree as follows:

Hereinafter, CAPEWELL and CTI shall collectively be referred to as the "Parties". This Sales and Marketing Representative Agreement (hereinafter "Agreement") concerns the cooperation of the Parties in the defined market and technology area of Collaboration Technology Products.

WHEREAS, the relationship between the Parties is characterized by mutual trust, respect, and goodwill; and

WHEREAS the Parties, by combining the efforts, resources, and talents of the two companies, seek to develop a dominant share of the Collaboration market of the future; and

WHEREAS the Parties seek to attain a competitive advantage by combining the strengths of the two companies; and

WHEREAS the Parties seek to maximize the potential gain for both companies while limiting risk to either company; and

WHEREAS, specifically, and in the first instance, CTI, having developed a Collaboration Mission Planning System (ctMPS), the Parties seek to market this product to US and International customers to the mutual benefit of both Parties.

NOW THEREFORE, in consideration of the foregoing and relative to such Agreement, the Parties agree as follows:

## 1. APPOINTMENT AS REPRESENTATIVE

Upon the terms and conditions set forth in this Agreement, CTI hereby appoints CAPEWELL, and CAPEWELL hereby agrees to act as CTI's Sales and Marketing representative with exclusive international rights and limited US rights as expressly specified in this Agreement for CTI's proprietary ctMPS Collaboration Mission Planning System (the "Products"), associated equipment, and training and support services. In exchange for such exclusive international rights, CAPEWELL agrees to use its global sales network to promote the Products. In addition, CAPEWELL assumes the role of a Value Added Reseller of the Products for sales to the United States government, or for other entities as mutually agreed between the parties. This agreement is for the ctMPS product only, including point releases and major upgrades determined by CTI to be ready for marketing, sale and operation. This agreement shall not apply to any research contracts involving ctMPS-derived capabilities, including BAA, SBIR or any like-funded research.

Sales and Marketing Representative Agreement

As a sales representative, CAPEWELL agrees that it will not represent any other person or entity engaged in the business of manufacturing, distributing or selling products similar to or competitive with the products sold by CTI except as approved by an Officer of CTI in writing. As sales representative CAPEWELL will clearly identify CTI as the owner creator of ctMPS with CAPEWELL acting as sales and marketing representative only.

2. TERM

The initial term of the Agreement shall be for forty-eight (48) months beginning on the effective date of this Agreement stated above. CAPEWELL will have an option to extend for one more year at the end of the 48 month term. However, either party may terminate this Agreement for Cause upon ninety (90) days written notice to the other party. (See section 4, Effect of Termination). At the end of the term, CTI will reevaluate need for future services.

For Cause includes:

Year one: Capewell's failure to provide a reasonable sales effort for the Products, including, without limitation, meeting the spending commitments contained herein;
Year two: Capewell's failure to sell at least 500 units of the Products
Year three: Capewell's failure to sell at least an additional 500 units (total of 1000 units) of the Products
Year four: Capewell's failure to sell at least an additional 500 units (total of 1500 units) of the Products

3. PROPRIETARY INFORMATION

a) "PROPRIETARY INFORMATION" means any information relating to this Agreement that is disclosed by either of the Parties to the other, and:

i) When disclosed in writing, is clearly and conspicuously marked by an appropriate stamp or legend identifying it as "Proprietary" or "Confidential"; or

ii) When disclosed visually or orally, is identified as "Proprietary" or "Confidential" at the time of disclosure; or

iii) When disclosed by electronic transmission (*e.g.*, facsimile, electronic mail, etc.) in either human-readable or machine-readable form, and the disclosing Party marks it electronically

as "Proprietary" within the electronic transmission, such marking to be displayed in human-readable form along with any display of the Proprietary Information; or,

iv) When disclosed by delivery of an electronic storage medium device, and the disclosing Party marks the storage medium or the memory device itself as containing Proprietary Information and electronically marks the stored information as "Proprietary", such marking to be displayed in human-readable form along with any display of the Proprietary Information.

Notwithstanding anything herein to the contrary, any non-public information regarding the Products shall be deemed to be Proprietary Information for purposes of this Agreement. During the term of this Agreement, CTI may provide Proprietary Information regarding the Products and marketing of the products which CTI desires to protect against unrestricted disclosure or competitive use, and which is furnished for the purpose of this Agreement and appropriately identified as being proprietary when furnished to CAPEWELL. CAPEWELL agrees to use CTI's Proprietary Information only for the purposes specified in this Agreement. CAPEWELL further agrees to protect CTI's Proprietary Information from disclosure to any third party, unless granted permission for such disclosure by CTI in writing.

The standard of care for protection of Proprietary Information will be that degree of care that CAPEWELL uses to prevent disclosure, publication or dissemination of its own proprietary information.

Both Parties will keep a Non-Disclosure Agreement current for the term of the agreement.

The obligations of nondisclosure and use of Proprietary Information imposed in the preceding paragraphs shall terminate five (5) years after termination or expiration of this Agreement.

4. <u>EFFECT OF TERMINATION</u>

The termination of this Agreement pursuant to Section 2 shall not release either party from any accrued obligations to pay any sum to the other party (whether then or thereafter payable) or operate to discharge any liability incurred prior to the termination date. Upon termination of this Agreement by either party for any reason:

(A) CAPEWELL shall cease its marketing of the Products of CTI, cease to use any Proprietary Information of CTI, as well as the names or trademarks of CTI or its affiliates, and return any Proprietary Information to CTI within thirty (30) days of termination.

(B) CAPEWELL shall advise CTI of the status of all orders, negotiations, proposals and bids outstanding with regard to the Products of which CAPEWELL is aware.

(C) CTI shall not be held liable for costs incurred by CAPEWELL (labor, travel, or materials) in performing duties in support of this Agreement.

5. <u>SALES ACTIVITIES OF CAPEWELL</u>

a) CAPEWELL agrees to use its "best efforts" to market and promote the ctMPS Products and associated equipment and services. CTI will establish pricing for the ctMPS Products and services to CAPEWELL, such pricing to be included in CAPEWELL's proposal to a prospective customer. For International customers, CAPEWELL will add its own mark up to the CTI quoted price and be responsible for submitting the quotation to the customer. For sales to US customers, CAPEWELL will receive a percentage of each gross sale as specified in APPENDIX A.

b) It is further agreed that CAPEWELL will represent CTI's ctMPS product to all levels of the US DOD and the Ministry of Defense and commercial organizations outside of the 50 United States and its Territories where Products may be applicable as a Value Added Reseller.

c) Export Control:

Responsibility for compliance with United States Department of State International Traffic in Arms Regulations (22 CFR Parts 120-130) and any other United States export controls shall lie solely with CAPEWELL. CAPEWELL shall be responsible for coordinating and submitting the application for any necessary licenses for the export of technical data and classified defense articles.

d) Training:

CTI will provide to CAPEWELL a training package for the Products including software documentation, product manuals, and user's guides. CAPEWELL will send their personnel to a CTI designated location for training in the use of the Products.

e) CAPEWELL will contribute on an annual basis an amount of not less than $US50,000 towards sales and marketing efforts on behalf of this agreement, including any amounts paid to CTI for sales and marketing support. This amount shall be validated by expenditure reports. The start date for this funding is the Effective Date of this agreement. Funded activities include, but are not limited to, travel and travel related expenses as well as cost of marketing materials, attendance at trade shows and standard commercial rates for CAPEWELL staff participation. The ctMPS product will be represented at the trade shows as specified in APPENDIX B as a minimum.

f) CAPEWELL will use existing lobbyist arrangements to assist in Sales and Marketing efforts to include Foreign Military Sales (FMS).

g) CAPEWELL will provide administrative support as well as corporate expertise for contracts, reports, and limited legal support. (Does not include Intellectual Property issues)

6. CONTRACTUAL COMMITMENTS

Upon receipt by CAPEWELL of a binding commitment from a customer in the form of a contract, purchase order, letter of commitment, or other legally binding document concerning the procurement of ctMPS products, CAPEWELL will promptly provide a copy of such commitment to CTI.

7. INTEGRATED LOGISTICS SUPPORT (ILS) SERVICES

CAPEWELL will market Integrated Logistics Services Contracts for ctMPS. First-tier support for international customers will be provided by CAPEWELL. First-tier support for US customers will be provided by TBD. Second-tier support provided by CTI to CAPEWELL's international customers will be billed at an agreed to rate.

CAPEWELL will receive 15% of US gross sales of ILS contracts negotiated with customers.

8. SOFTWARE MAINTENANCE

CAPEWELL shall be responsible for selling software maintenance packages to customers. CAPEWELL will receive 15% of the US gross sales of software upgrades. CTI will define the cost of the software maintenance program.

9. MEDIA PRODUCTION

CAPEWELL will provide all services for reproduction and shipment of product media from CTI developed masters. Media to include at a minimum, software, documentation, and training materials.

10 LICENSE MANAGEMENT

CTI will provide the underlying licensing mechanism and CAPEWELL implement the licensing scheme. CAPEWELL will only sell or distribute any software hereunder subject to CTI's End User License Agreement.

11. COMMISSION FEES

Except as expressly provided herein, no other fees are payable by one party to the other.

12. PAYMENTS

All payments to CTI for Products and services will be due and payable by CAPEWELL not later than 15 days after receipt of payment by CAPEWELL or sixty days after invoice (for US orders) or 150 days (for international), whichever is shorter. Any amounts which are past due shall be subject to an interest charge of 1.5% per month, or the maximum rate permitted by law, whichever is less. If any payment to CTI for invoices made to the US Government is more than thirty (30) days overdue, CTI shall have the right to suspend its performance under this Agreement until such invoices are paid.

13. REPORTS

CAPEWELL shall provide to CTI sales reports and marketing activity information as CTI may from time to time require, but no less than quarterly. Each report shall contain at least a reasonably detailed report of the sales and marketing activity which has been conducted by CAPEWELL during the preceding calendar quarter and the quantity of sales, and copies of all relevant sales contracts entered into during such quarter. CAPEWELL shall also provide to CTI any feedback which it has received from customers or potential customers of the Products.

14. EXPENSE REIMBURSEMENT

CTI shall not pay or reimburse CAPEWELL for expenses incurred by CAPEWELL in connection with its marketing or sales efforts, except as specifically consented to in advance by an Officer or designee of CTI in writing. CAPEWELL will pay for all travel related expenses for CTI staff travel and attendance at briefings and trade shows with prior approval of the CAPEWELL-appointed Program Manager (PM).

15. STANDARD OF CONDUCT

CTI and CAPEWELL maintain and expect all of its outside sales representatives to maintain the highest standard of conduct with regard to any and all business transactions. It is CTI and CAPEWELL policy to prohibit any sales representative from attempting to provide or offer to provide any kickback, bribe, gratuity, tip or donation, or to solicit, accept or attempt to accept the same. By signing this Agreement, CAPEWELL confirms their jurisdictional familiarity with all rules, laws, statutes, and regulations of their sales territory and those of the United States, and CAPEWELL hereby warrants that it shall act in compliance with any such rules, laws, etc.

16. WARRANTIES AND INDEMNIFICATION

16.1 Warranties. CTI warrants to CAPEWELL that the Products shall perform substantially in accordance with its then-current Documentation for a period of ninety (90) days after delivery. This warranty may be extended by CTI where reasonably required by CAPEWELL, as required by CAPEWELL's end-user customer. CTI shall have no liability with respect to any failure of the Products to perform as warranted under this Section 16 if such failure results from any changes or modifications made to the Products by CAPEWELL or any third party. This warranty is made solely to CAPEWELL and CAPEWELL shall be solely responsible for any warranty to, or claims by, end-users of the Products or any other third parties.

16.2 Remedies. CAPEWELL'S exclusive remedy and CTI'S sole obligation under the warranty set forth in Section 16.1 shall be for CTI to provide telephone or email assistance to CAPEWELL, during normal business hours, to attempt through reasonable efforts to correct any material failure of the Products to perform as warranted, or to provide work-arounds and to use commercially reasonable efforts to correct the failure.

16.3 Limitations; Remedies. CTI'S entire liability and CAPEWELL'S exclusive remedy as to defects, performance or nonperformance of the Products shall be the warranties and remedies as set forth in this Section, regardless of the theory of claim or form of action. **THE ABOVE ARE THE ONLY WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, THAT ARE MADE BY CTI AND CTI DISCLAIMS ALL OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. CTI DOES NOT WARRANT THAT USE OF THE PRODUCTS WILL BE UNINTERRUPTED OR ERROR-FREE. IN NO EVENT SHALL CTI BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, OR INCIDENTAL DAMAGES (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION, AND THE LIKE) ARISING OUT OF THIS AGREEMENT. IN NO CASE SHALL CTI'S AGGREGATE LIABILITY FOR ALL MATTERS ARISING OUT OF THE SUBJECT MATTER OF THIS AGREEMENT, WHETHER IN CONTRACT, TORT OR OTHERWISE, EXCEED THE AMOUNT ACTUALLY RECEIVED BY CTI PURSUANT TO THIS AGREEMENT.**

16.4 Defense. In the event of any claim or allegation against CAPEWELL of infringement or misappropriation of any copyright, U.S. patent, trade secrets, or mask work rights by reason of the use, copying or distribution by CAPEWELL of the Products as permitted hereunder, CTI will, at its expense but subject to the limitations set forth in this Section, defend such claim, and pay any costs, expenses and damages actually awarded in connection therewith, including the reasonable fees and expenses of the attorneys engaged by CTI for such defense. CTI shall have the sole and exclusive authority to defend and/or settle any such claim or action, provided that CTI shall keep CAPEWELL informed of, and shall consult with, any independent attorneys appointed by CAPEWELL at CAPEWELL's own expense regarding the progress of such litigation.

16.5 Certain Actions in Response to Infringement. If the use, copying or distribution of any Products by CAPEWELL has become, or in CTI's opinion is likely to become, the subject of any claim of infringement, CTI may at its option and expense (i) procure for CAPEWELL the right to continue using the Products as set forth hereunder, (ii) replace or modify the Products to make it non-infringing, (iii) substitute an equivalent of the Products or (iv) terminate this Agreement and refund to CAPEWELL all payments made hereunder.

16.6 Limitation of Indemnification for CAPEWELL.

(a) CTI shall have no liability or obligation hereunder with respect to any infringement claim if such infringement is caused by (i) compliance with designs, guidelines, plans or specifications of CAPEWELL; (ii) use of any Products by CAPEWELL or its customers in an application or environment other than as specified in applicable documentation; (iii) modification of any Products by any party other than CTI or the combination, operation or use of any Products with other product(s) not supplied by CTI; (iv) use of any Products with the Products) where the Products would not by itself be infringing or (v) products, including without limitation software and technology, originally supplied to CTI by any third party vendors.

(b) THIS SECTION STATES CTI'S ENTIRE LIABILITY AND OBLIGATION, AND CAPEWELL'S EXCLUSIVE REMEDY, WHETHER STATUTORY, CONTRACTUAL, EXPRESS, IMPLIED OR OTHERWISE, FOR CLAIMS OF INTELLECTUAL PROPERTY INFRINGEMENT.

16.7 Indemnification By CAPEWELL. Except where CTI is obligated to indemnify CAPEWELL under Section 16.6 this Section, and without limiting any other obligation of CTI to indemnify CAPEWELL hereunder, CAPEWELL shall indemnify, defend and hold CTI harmless from any and all claims, damages, losses, liabilities, costs and expenses (including reasonable attorney's fees) arising out of or in connection with CAPEWELL's use or distribution of the Products. CAPEWELL shall have the sole and exclusive authority to defend any such claim or action, provided that CAPEWELL shall keep CTI informed of, and shall consult with any independent attorneys appointed by CTI at CTI's own expense regarding, the progress of such litigation, and provided that CTI may not agree to any settlement without first obtaining CAPEWELL's consent, which shall not be unreasonably withheld.

17. RELATIONSHIP OF THE PARTIES

CAPEWELL is an independent Company and nothing contained in this Agreement shall be deemed or construed to constitute a relationship of partnership, joint venture, employer and employee, or any other association between the parties. Neither party shall have the right or power to bind or incur any obligation on behalf of the other party. The hiring of employees, salesmen or representatives by either party shall be at the party's own risk, expense and supervision, and any such

persons employed or retained by each party shall not have any claims against the other party for salaries, commissions, expense reimbursements or other items of compensation or costs.

18. SALE OF EITHER PARTY

Agreements in force between the Parties remain in force and survive the sale of either/both Parties.

19. ARBITRATION

Any controversy or claim arising from the operation of this Agreement shall be settled through arbitration conducted in the State of Rhode Island, under the rules of the American Arbitration Association (AAA). CTI and CAPEWELL agree to share equally the cost of services of the AAA. The parties agree to be bound by the decision of the AAA arbitrator.

20. MISCELLANEOUS

a) Governing Law. All questions with respect to the construction of this Agreement, its jurisdiction, and the rights and liabilities of the parties shall be governed by the Laws of the United States and the State of Rhode Island. Both parties hereby agree to be subject to the jurisdiction of the Courts of Rhode Island.

b) Successors and Assigns. This Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and assigns. CAPEWELL may not assign or otherwise transfer any of its rights or obligations under this Agreement without CTI's prior written consent, and any such transfer in violation of this paragraph shall be void.

c) Entire Agreement. This Agreement contains all of the terms and conditions agreed upon by the parties, and supersedes any prior agreements or understanding with respect to the subject matter of this agreement.

d) Amendment or Modification of Agreement. This Agreement may be modified, altered or amended only by the written agreement of both parties.

e) Attorney's Fees and Costs. In any arbitration or other legal proceeding to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees, costs and necessary disbursements, in addition to any other relief to which it may be entitled.

f) Notice. Any notice, consent, demand, or request required or permitted by this

Agreement shall be in writing, and shall be deemed to have been sufficiently given when personally delivered or deposited in the United States mail, postage prepaid registered mail, addressed as follows:

<u>For Capewell</u>

Michael P. Hickey
Capewell Components Co. LLC
105 Nutmeg Road South
South Windsor, CT 06074

<u>For CTI</u>

Joshua Trainer
Collaboration Technologies, Inc
138 Laurel Ridge Lane
North Kingstown, RI 02852

Sales and Marketing Representative Agreement

In Witness Whereof, the Parties hereto have caused this Agreement to be executed as of the day and year written below.

Executed as a sealed instrument Date 2/6/06.

CAPEWELL COMPONENTS CO., LLC

Mr. Richard Cleary
Vice President/General Manager
105 Nutmeg Road South
South Windsor, CT 06074
Tel. (860) 610-0700
Fax. (860) 610-0120

By: Richard Cleary
Richard Cleary
Vice President/General Manager

Witnessed:

By: Michael F. Hickey

COLLABORATION TECHNOLOGIES INCORPORATED

Mr. Joshua Trainer
President/CEO
138 Laurel Ridge Lane
North Kingstown, RI 02852

By: ______________________
Joshua Trainer
President and CEO

Witnessed:

By: ______________________

Sales and Marketing Representative Agreement

APPENDIX A – ctMPS US Gross Sales Table

| | Percent of US Gross Sales to Capewell | Comment |
|---|---|---|
| | 5% not to exceed $500,000 | Special consideration for initial SOMPO sale |
| | 20% | Typical sales allocation |

Sales and Marketing Representative Agreement

APPENDIX B - ctMPS Trade Show Representation

| Trade Show | Date | Notes |
|---|---|---|
| Advanced Airlift Tactics Conference (AATC) | 22 – 27 Jan 06 | |
| Mission Planning Users Conference (MPUC) | 7 – 12 May 06 | |
| ANG Tactics Conference – Tucson, AZ | October 06 | |
| | | |

Outline of Terms
APPENDIX A Amended 21AUG06 – ctMPS US Gross Sales Table

| | Percent of US Gross Sales to Capewell | Comment |
|---|---|---|
| | 5% not to exceed $500,000 | **Special consideration for initial SOMPO sale** |
| | 21% | **Typical sales allocation** |

In Witness Whereof, the Parties hereto have caused this Amended Agreement to be executed as of the day and year written below.

Executed as a sealed instrument Date 8/21/06.

CAPEWELL COMPONENTS CO., LLC

Mr. Richard Cleary
Vice President/General Manager
105 Nutmeg Road South
South Windsor, CT 06074
Tel. (860) 610-0700
Fax. (860) 610-0120

By: ______________________
Richard Cleary
Vice President/General Manager

Witnessed:
By: ______________________ 8/31/06

COLLABORATION TECHNOLOGIES INCORPORATED

Mr. Joshua Trainer
President/CEO
138 Laurel Ridge Lane
North Kingstown, RI 02852

By: ______________________
Joshua Trainer
President and CEO

Witnessed:
By: ______________________