UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COLLABORATION TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| Vs. | ) | C.A. # 08-0165 ML |
| | ) | |
| CAPEWELL COMPONENTS CO., LLC. | ) | |
| | ) | |
| Defendant | ) | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S
COMBINED MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

NOW COMES the Plaintiff, Collaboration Technologies, Inc. (hereafter, "CTI"), and, hereby files the within response to the Defendant's Combined Motion to Compel Arbitration and Stay Litigation ("the Motion"). The purchase orders – specifically defendant's actions to terminate them - form the basis for CTI's claims. Those orders do not contain any agreement to arbitrate this dispute. Furthermore, despite defendant's protestations to the contrary, the Sales and Marketing Representative Agreement ("the Agreement") does not require the parties to arbitrate disputes arising out of the Agreement, let alone the purchase orders. Accordingly, CTI objects to defendant's motion in so far as it seeks an Order of this Court compelling CTI to arbitrate the remaining disputed issues. CTI does not object to defendant's motion with respect to a stay of this action and, in this regard, CTI respectfully suggests a 90-day stay of the litigation.

REQUEST FOR ORAL ARGUMENT

CTI respectfully requests oral argument at a date and time to be set by the Court; CTI does not request an evidentiary hearing at this time regarding the Motion.

COLLABORATION TECHNOLOGIES, INC.

By its attorneys,

Brockmann & Associates, Ltd.

By: /s/ Peter J. Brockmann

Peter J. Brockmann, Esq. #4355
77 Narragansett Avenue
Jamestown, Rhode Island 02835
(401) 423-1969; fax: (401) 633-6143
pjb@brocklaw.net

Dated: June 12, 2008

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the within document was filed electronically on June 12, 2008, and is available for viewing and downloading from the Court's ECF system. Service of a true and accurate copy of the within will be made by electronic means upon the following:

Gordon P. Cleary, Esq.
Brooks R. Magratten, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Charles L. Howard, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103

/s/ Peter J. Brockmann

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COLLABORATION TECHNOLOGIES, INC.<br><br>Plaintiff<br><br>Vs.<br><br>CAPEWELL COMPONENTS CO., LLC.<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. # 08-0165 ML |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF RESPONSE TO DEFENDANT'S COMBINED MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

The Plaintiff, Collaboration Technologies, Inc. (hereafter, "CTI"), in support of its Response to Defendant's Combined Motion to Compel Arbitration and Stay Litigation ("the Motion"), states as follows.

**RELEVANT FACTS**

A. The Agreement

On February 6, 2006, the parties entered into a Sales and Marketing Representative Agreement ("the Agreement"). *Verified Complaint, Exh. A.* Defendant drafted and presented the Agreement to CTI. Defendant's obligations under the Agreement included the following primary tasks:

1) To act as CTI's sales and marketing representative with respect to CTI's collaboration technology ("the Software"); and

2) To ensure compliance with the U.S. Department of State International Traffic in Arms Regulations and any other U.S. export controls.

Section 19 of the Agreement provides as follows: "Any controversy or claim arising from the operation of this Agreement shall be settled through arbitration conducted in the State of Rhode Island under the rules of the …(AAA)." However, immediately following section19 is section 20(a) which states: "All questions with respect to the construction of this Agreement, its jurisdiction and the rights and liabilities of the parties shall be governed by the Laws of the United States and the State of Rhode Island. ***Both parties hereby agree to be subject to the jurisdiction of the Courts of Rhode Island***." (emphasis added). Later in section 20, the Agreement further provides, "In any arbitration ***or other legal proceeding to enforce or interpret the terms of this Agreement***, the prevailing party shall be entitled to reasonable attorney's fees …" (emphasis added).[1]

B. The Purchase Orders

Following years of development of the Software by CTI, and twenty-two months following the execution of the Agreement, the Australian Government Department of Defence ("A-DOD") issued upon defendant a "Request for Quotation for Goods and Services" ("RFQ").[2] Defendant's quotation ("Quotation") was promptly issued to A-DOD for the 30 Software licenses. The Quotation does not make any mention of the Agreement and, in fact, contains terms and conditions that are inconsistent with the Agreement. Following the Quotation, by purchase order dated December 19, 2007, ("the A-DOD P.O."), A-DOD ordered 30 Software licenses as well as software development deliverables to be performed by CTI. *Verified Complaint, Exh. D.* The A-DOD P.O., as

[1] Defendant conveniently fails to mention in its motion these section 20 provisions, despite the sections' obvious importance regarding the issue of arbitrability.
[2] CTI worked directly with the A-DOD on this project from inception of the relationship up to the date A-DOD issued its purchase order for the Software.

acknowledged and accepted by defendant, does not refer in any way to the Agreement and, as with the Quotation, contains certain provisions that are inconsistent with the Agreement. The A-DOD P.O. does not require arbitration of any claims or disputes.

With the A-DOD P.O. in hand, defendant proceeded to issue to CTI a purchase order on February 21, 2008, for the 30 Software licenses and other deliverables called for in the A-DOD P.O. Following some negotiations between the parties, and consistent with CTI's initial admonitions to defendant regarding the necessity for a payment schedule, defendant issued to CTI a revised purchase order dated March 6, 2008 ("the CTI P.O."). *Verified Complaint, Exh. E.* Importantly, the CTI P.O., issued by defendant over two years after the execution of the Agreement, makes no mention of the Agreement;[3] furthermore, the CTI P.O. contains terms and conditions that are inconsistent with those in the Agreement; one important inconsistency is that the purchase order payment terms are "net 30", while the Agreement otherwise gives defendant 15 days after its receipt of payment or 150 days after invoice (for international orders), whichever is shorter, to pay CTI.

In short, the purchase orders at issue in this case were issued and accepted no less than 22 months *after* execution of the Agreement, make no mention of the Agreement, contain terms and conditions that differ from those in the Agreement and do not require the arbitration of any disputes whatsoever regarding or arising from the operation of the purchase orders.

[3] Certainly, had the parties to the CTI P.O. intended it to be governed and controlled by the terms and conditions of the Agreement (such as in the case of a master-type agreement), they could have very simply inserted into their negotiated purchase order a term incorporating the Agreement by reference, or the like. Similarly, they could have included in the Agreement itself a clause expressly giving the Agreement applicability to subsequent contracts (purchase orders). The parties failed to do either; in fact, §20(c) of the Agreement states: "Entire Agreement. This Agreement contains all of the terms and conditions agreed upon by the parties …"

C. The Disputes Involving the Purchase Orders[4]

With the two necessary purchase orders issued, acknowledged and accepted by all parties, CTI promptly ramped up its efforts on the Software deliverables for A-DOD. On or about March 8, 2008, *according to the terms of the CTI P.O.*, CTI issued to defendant the first invoice to cover CTI's up-front costs and expenses associated with the A-DOD project. *Verified Complaint, Exh. F*. CTI continued to work on the deliverables and was on track to meet all scheduled deadlines until, on April 14, 2008, defendant, quite unexpectedly, advised CTI that it was terminating the relationship "effective immediately". *Verified Complaint, Exh. G.*[5] Despite CTI's repeated pleas to Defendant not to take any action that would interfere with the critical contractual relationships with A-DOD, on April 24 defendant unilaterally and in direct defiance of CTI's pleas advised A-DOD that it was no longer supporting the Software line, that it was cancelling defendant's invoice to A-DOD issued 60 days earlier and that it was asking A-DOD to cancel its purchase order. *Verified Complaint, Exh. I.* Defendant did not share with or disclose to CTI the April 24 letter until 5 days later. Quite understandably, A-DOD has as well been put in a very difficult position with respect to securing the deliverables from CTI. In a May 5, 2008, email to CTI, Lt. Col. Wild from A-DOD states:

> The turn of events has placed us in a very awkward position. As the letter from Capewell cancelled all Commonwealth orders, the current situation is that I will have to re-bid for funding. Unfortunately, unless CTI has US State Department approval for export we will not be even able to replace the order with a purchase direct to CTI. If you do hold the necessary export license, we may be able to seek the assistance of the Australian Embassy in Washington … I am aware through dealings with other US

[4] When this action was commenced, defendant was past due and in arrears for approximately $9,000.00 due to CTI for expense reimbursements, as called for in the Agreement. Defendant has since reimbursed CTI for this sum and, accordingly, that aspect of this matter can be disposed of at this time, leaving for adjudication CTI's claims for damages arising solely in connection with the purchase orders.

> companies that the process requirements for State Department approval can be quite lengthy …

Accordingly, defendant has effectively cancelled both purchase orders. Meanwhile, CTI has just received confirmation that defendant still has not obtained State Department approval for export of the deliverables to A-DOD (despite defendant being advised of the application problem back on March 24, 2008).

Since receiving defendant's letters of termination, CTI has devoted considerable time and attention to trying to resurrect the contractual relationship with A-DOD. Without the necessary State Department approvals, CTI cannot continue with its execution of the deliverables to A-DOD; nor is there even a replacement purchase order issued upon CTI (or defendant's replacement) by A-DOD.

Upon commencement of this action, CTI made demand for a jury trial.

## LEGAL ANALYSIS

As the movant seeking to compel arbitration, defendant "must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003). Addressing these issues somewhat out of order, CTI's claims arise solely out of the respective purchase orders, which do not require arbitration of the claims. Furthermore, even if CTI's claims for breach and interference with the 2008 purchase orders somehow fall within the ambit of the Agreement, although an arbitration clause appears therein, it is inconsistent with other terms of the Agreement and there is no clear evidence that the parties to the Agreement intended disputes to be exclusively resolved through arbitration.

**1. The Claims At Issue Arise Solely in Connection With the Purchase Orders.**

CTI's remaining claims in this action solely involve defendant's actions resulting in the termination of the two, critical purchase orders, especially the purchase order issued by A-DOD. Regardless of how artful (or inartful, as defendant claims) the Verified Complaint is drafted, CTI's claims arise solely from defendant's termination of the purchase orders. As mentioned, sums previously due and owing by defendant for sales and marketing efforts pursuant to the Agreement have since been paid in full.

CTI has expended considerable resources toward its execution of the CTI P.O., has invoiced defendant for the initial deliverables ($110,000.00) and defendant has failed and refused to pay that invoice. Indeed, the terms of that order are net 30; however, despite those clear terms, defendant subsequently insisted that it would not pay CTI for the deliverables until defendant received payment from A-DOD. This is contrary to the expressly negotiated and agreed-upon terms of the CTI P.O. Furthermore, now that defendant has withdrawn its invoice issued upon A-DOD, there is nothing due and owing from A-DOD to defendant and, the way things now stand, following defendant's logic, since there is no invoice issued upon A-DOD, there will be no payment from A-DOD to defendant and, consequently, no payment from defendant to CTI.[6]

Clearly, the purchase orders exist separate and apart from the Agreement. The orders were issued and accepted two years after the execution of the Agreement. Neither of the orders references the Agreement; indeed, A-DOD is not even a signatory to the Agreement. The orders contain terms inconsistent with terms in the Agreement; the

orders likewise contain terms, conditions and information not seen in the Agreement. The Agreement does not purport to be a master-type agreement that might otherwise apply to subsequent transactions or contracts. Without the Agreement, the orders stand alone as separate, fully-integrated, enforceable contracts.[7] Upon termination of the Agreement, the parties' respective contractual obligations under the purchase orders would otherwise continue in full force and effect. There is no need or requirement that certain terms of the Agreement be brought to bear upon the pending claims. Sourcing Unlimited v. ASIMCO, 052208 FED 1, 07-2754 (1st Cir. 2008) (side contract(s) subject to arbitration clause in other contract where terms and conditions in the contracts are the same, the side contract contains no material new terms and the side contract(s) becomes meaningless upon termination of the other contract). Here, the purchase orders do not rise and fall with the Agreement – they are all separate contracts. As stand-alone contracts, the purchase orders clearly and unequivocally do not require arbitration of CTI's claims.

Defendant argues that the purchase orders – or at least its order with CTI – must be governed by and subject to the terms of the Agreement including, in particular, the arbitration language contained therein. However, the weight of authority supports defendant's position only when two (or more) contracts are executed ***contemporaneously***. Personal Security & Safety Systems, Inc. v. Motorola, Inc., 297 F.3d 388, 394 - 395 (5th Cir. 2002) (an arbitration clause in an agreement will reach all aspects of the transaction "including those aspects governed by other contemporaneously

---

[6] Despite defendant's assurances, A-DOD has not re-issued a purchase order directly to CTI. There is certainly no guarantee that A-DOD will ever re-issue the order or, if it does, when that might happen and on what terms.

executed agreements that are part of the same transaction"); Televisa S.A. De C.V. v. DTVLA WC Inc., 363 F.3d 840 (9th Cir. 2004) (three separate but related agreements executed contemporaneously that are part of the same transaction are all governed by a broad arbitration clause found in only one of the agreements).

When agreements are not executed contemporaneously, an arbitration clause in one of the separate, fully integrated contracts cannot be imported into another contract. See, e.g., U.S. Small Business Admin. V. Chimcles, 447 F.3d 207 (3rd Cir. 2006); Combined Energies v. CCI, Inc., 514 F.3d 168 (Me. 2008) (if the parties intended the arbitration clause to apply to their other agreements, it would have been as easy to state that expressly). "Generally, one instrument may incorporate another instrument by reference. [However] [t]he contract must show an intent to incorporate the other document and make it part of the contract itself." Turner Construction Co. v. Midwest Curtainwalls, Inc., 543 NE2d 249, 251 (Ill. App. Ct. 1989). Indeed, there may even be occasions where two agreements are executed contemporaneously and related to the same transaction – though different aspects – and yet the arbitration clause in one will not be imported into the other. See, e.g., Fit Tech, Inc. v. Bally Total Fitness Holding Corporation, 374 F.3d 1 (1st Cir. 2004). As the First Circuit stated: "No one can seriously argue that clauses can be plucked at random from one agreement and inserted into the other." Id. at 9.

Two years between executions of the subject contracts certainly cannot constitute contemporaneous execution; nor are the executions otherwise sufficiently close in time to argue successfully that, together, they constitute one and the same transaction.

---

[7] Defendant implicitly acknowledges this fact when, in its April 14, 2008, termination letter, it expressly terminated the Agreement and, subsequently, the purchase orders.

Furthermore, the arbitration language in the Agreement is simply not broad enough to justify importing it into the controversy surrounding the purchase orders. The parties could have very easily incorporated the Agreement into their 2008 contract, or provided for the subsequent contracts to be covered by the Agreement, but they did not.

**2. Defendant Fails to Establish That CTI Agreed to Arbitration of its Claims.**

The stand-alone purchase order contracts do not call for arbitration of this controversy. However, even if the Agreement is somehow found to apply to the current dispute, defendant fails to carry its burden to establish that the Agreement contains a valid and binding arbitration clause.

The Agreement seems to contain conflicting clauses regarding the resolution of disputes. Accordingly, defendant cannot establish – as it must – that a valid, binding agreement to arbitrate exists in the Agreement. On the one hand, section 19 calls for arbitration of "any controversy or claim arising from the operation of this Agreement" while the immediately following section calls for the parties to be subject to the jurisdiction of the Courts of Rhode Island; section 20 provides for attorneys fees to the prevailing party "in any arbitration ***or other legal proceeding to enforce or interpret the terms of this Agreement***." (emphasis added). On its face, the Agreement seems to provide the parties with the choice of either binding arbitration or pursuing their claims in a legal proceeding before the Courts of Rhode Island. Thus, defendant fails to carry its burden of establishing that the parties expressly and exclusively agreed to arbitration of this controversy.

Defendant discusses at length the strong federal policy in favor of arbitration. While it is true that such a policy exists, and indeed there is a federal law ("the FAA") codifying that policy, it is also true that the policy is not without limits. Personal Security & Safety Systems, Inc. v. Motorola, Inc., 297 F.3d at 392. "Because arbitration is necessarily a matter of contract, courts may require a party to submit a dispute to arbitration **only if the party has expressly agreed to do so**." Id. at 392 (emphasis added). In other words, the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt Information Sciences v. Trustees of Leland Stanford, 489 U.S. 468, 478 (1989). As the Supreme Court has stated, "[a]rbitration under the [FAA] is a matter of consent, not coercion." Id. at 479. The FAA "does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed *in the manner provided for in [the parties'] agreement*."" Id. at 468. Thus, the federal policy favoring arbitration only applies if the parties have *expressly* agreed to arbitrate their dispute; there must be a clear, unambiguous agreement to arbitrate.

It is worth noting that under section 2 of the FAA, upon which defendant heavily relies, "A written provision in a … contract … to settle by arbitration a controversy thereafter arising ***out of such contract or transaction … shall be valid, irrevocable and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract" (emphasis added). The FAA is not without its limits; among other limits, the controversy must arise out of *that particular* contract or transaction. In this case, there *was* a controversy arising out of the Agreement: defendant failed to reimburse CTI for expenses associated with sales and marketing efforts. However, that controversy no

longer exists because defendant has since fully reimbursed CTI. All remaining claims filed by CTI arise solely out of the purchase orders and NOT the Agreement. Under the express language of the FAA, the claims need not be arbitrated.

**CONCLUSION**

As the movant, defendant bears the burden to establish that the arbitration language in the Agreement is binding upon a dispute involving fully–integrated contracts entered into two years later. First and foremost, the contracts are separate, independent, fully-integrated contracts and there is no basis in law to import arbitration language from the Agreement into a dispute arising out of the subsequent contracts. Secondarily, the arbitration language in the Agreement does not constitute a binding arbitration clause, such that even if the Agreement somehow governs the subsequent contracts, arbitration is merely an option for the parties, but certainly not a requirement upon them. Defendant has failed to meet its burden and the request to compel arbitration must be denied.

COLLABORATION TECHNOLOGIES, INC.

By its attorneys,

Brockmann & Associates, Ltd.

By: /s/ Peter J. Brockmann
Peter J. Brockmann, Esq. #4355
77 Narragansett Avenue
Jamestown, Rhode Island 02835
(401) 423-1969; fax: (401) 633-6143
pjb@brocklaw.net
Dated: June 12, 2008

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the within document was filed electronically on June 12, 2008, and is available for viewing and downloading from the Court's ECF

system. Service of a true and accurate copy of the within will be made by electronic means upon the following:

Gordon P. Cleary, Esq.
Brooks R. Magratten, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Charles L. Howard, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103

/s/ Peter J. Brockmann