UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| COLLABORATION TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| *vs.* | ) | 1:08-cv-00165-ML-LDA |
| | ) | |
| CAPEWELL COMPONENTS CO., LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**<u>COMBINED MOTION TO COMPEL ARBITRATION AND STAY LITIGATION</u>**

Pursuant to Rule 7(b)(2) of the Local Rules of this Court, the defendant, Capewell Components Co., LLC ("Capewell"), hereby respectfully submits its Reply Memorandum in further support of its Combined Motion to Compel Arbitration and Stay Litigation (the "Motion"). Contrary to the plaintiff's claims, the parties have entered into a valid and enforceable arbitration agreement, which encompasses each of the claims asserted against Capewell in the above-captioned action. Accordingly, and for the reasons set forth in Capewell's Motion, this Court should compel the plaintiff, Collaboration Technologies, Inc. ("CTI"), to arbitrate its claims against Capewell and stay litigation of CTI's claims against Capewell in this action until such arbitration proceeding is concluded.

## I. THE CLAIMS ASSERTED BY CTI ARISE FROM THE OPERATION OF THE AGREEMENT AND ARE THEREFORE ARBITRABLE.

In a bid to avoid its contractual agreement to arbitrate any controversy or claim arising from the operation of the parties' February 6, 2006 Sales and Marketing Representative Agreement (the "Agreement"), the plaintiff now attempts to cast the broad allegations of its complaint as a dispute solely over two purchase orders, one issued to Capewell by the Australia Ministry of Defence and one issued by Capewell to CTI (the "Purchase Orders"). Plaintiff

claims that because the Purchase Orders do not contain an arbitration provision, it has no obligation to arbitrate. (Plaintiff's Response to Defendant's Combined Motion to Compel Arbitration and Stay Litigation ("Opp. Mem.") at 6-7 & n.4, 7, 8-11) Plaintiff's claims are unavailing.

Plaintiff's Memorandum asserts that, because defendant has reimbursed plaintiff for certain expenses that it had claimed were owed to it, "that aspect of this matter can be disposed of at this time, leaving for adjudication CTI's claims for damages arising solely in connection with the purchase orders." (Opp. Mem. at 6, n.4) The complaint filed in this action, however, is based not only on a claim that Capewell breached the Purchase Orders, but the first count specifically alleges that Capewell breached the Agreement. Plaintiff has not withdrawn Count One of its complaint and its vague statement that "that aspect of this matter" has been resolved simply is irrelevant.

Moreover, as pleaded, plaintiff's claim that Capewell breached the Agreement goes far beyond a claim that Capewell failed to reimburse it for expenses. Indeed, Count One of CTI's complaint is based on the thirty-seven preceding paragraphs, which include the issuance, acceptance and termination of the Purchase Orders. As is plain from the complaint itself, plaintiff's claim that Capewell breached the Agreement is based on the same set of facts that give rise to its claims that Capewell breached the Purchase Orders.[1] (Complaint, ¶¶ 38 & 39, 41 & 42, 44 & 45) It is similarly apparent from plaintiff's own statements that its claim that Capewell sought to terminate the Purchase Orders forms the basis for its claim that Capewell breached the Agreement. Specifically, plaintiff asserts that it has brought claims against the defendant for,

[1] The remaining counts in plaintiff's complaint, for tortious interference and breach of the covenant of good faith and fair dealing, also are based on the same set of facts as plaintiff's claim that Capewell breached the Agreement. (Complaint, ¶¶ 48 & 49, 51 & 52)

among other things, "breaches of contract (both the Agreement and the purchase orders)" and states:

> With respect to the breaches of contract, the movant's case could not be more clear and straightforward. The defendant seeks (in writing) to terminate the purchase order with A-DOD. Certainly, CTI is a direct and intended beneficiary of that contract. Logically, without the A-DOD P.O., the purchase order between CTI and the defendant becomes moot and unnecessary. Despite CTI's significant investment of resources over the past several months up to the present in securing the purchase orders for the A-DOD deliverables and then in executing upon those orders, the defendant now seeks at a whim to terminate the purchase orders. The defendant's reason for doing so is, astoundingly, that it has apparently just decided that it no longer wants to support the Software sales to A-DOD. Despite binding contractual commitments to the Australian defense department and CTI, the defendant seeks to unilaterally remove itself from the commitments. The defendant has, in short, no legal defenses to its breach of the Agreement or its breaches of the binding purchase orders.

Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order / Preliminary Injunction, at 11-12 (footnote omitted); see also Complaint, ¶ 16.

As is set forth more fully in Capewell's Memorandum of Law in Support of Combined Motion to Compel Arbitration and Stay Litigation ("Opening Memorandum" or "Mem."), because each of these claims arise out of the same set of facts and are related to plaintiff's claim that Capewell breached the Agreement, each of the claims should proceed to arbitration pursuant to the Arbitration clause contained in the Agreement. Baychar, Inc. v. Frisby Techs., No. 01-CV028-B-S, 2001 U.S. Dist. LEXIS 11037, at *18-*19 (D. Me. July 26, 2001) (compelling arbitration and staying proceedings).

Plaintiff seeks to avoid this result, asserting that because the Purchase Orders were not executed contemporaneously with the Agreement, the arbitration provision set forth therein cannot be "imported" into the Purchase Orders. (Opp. Mem. at 9-10) This claim misses the mark.

Capewell does not, as plaintiff asserts, ask the Court to import the arbitration provision of the Agreement into other, unrelated contracts. Rather, it is Capewell's position that the plaintiff's claim that Capewell breached the Purchase Orders is a claim or controversy that arises from the operation of the Agreement. Capewell's position is well-founded. The Purchase Orders are both contemplated by and themselves arise from the operation of the Agreement. See Opening Memorandum at 2-3; see also Complaint, ¶ 7 ("Thereafter, pursuant to the Agreement, CTI and the defendant collaborated on efforts to secure a purchase order from A-DOD ...." (emphasis added)). Because the Purchase Orders themselves arise from the operation of the Agreement, plaintiff's claim that Capewell breached the Purchase Orders is a claim or controversy arising out of the operation of the Agreement, falling squarely within the arbitration clause that governs the parties' contractual relationship.

The situation in the present action is on all fours with the decision of the Fourth Circuit in J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315 (4th Cir. 1988). The parties to that action had entered into distribution agreements whereby the plaintiff agreed to be the exclusive importer for defendant's affiliates. The distribution agreements contained, among other things, an arbitration clause, which encompassed "[a]ll disputes arising in connection with the present contract ...." Id. at 316-17, 318. The distribution agreements did not, however:

> stipulate the price of imports or [plaintiff's] compensation. They made no reference to security agreements. Instead, the distribution contracts simply provided: "The price and terms of all products listed above shall be by agreement of the parties simultaneous with or before confirmation of the purchase order." The importation of products, [plaintiff's] compensation, and the affiliates security interests were accomplished by separate purchase orders, compensation letters, and security agreements which do not contain an arbitration clause.

Id. at 319.

The parties' relationship soured when the defendant decided that its affiliates should distribute their products directly and the plaintiff brought suit claiming that the defendant had caused its affiliates, among other things, "(1) to terminate the distribution agreements, [and] (2) to cancel confirmed purchase orders ...." Id. at 317. Defendant moved to dismiss, asserting that the claims brought by the plaintiff were subject to the arbitration provision of the parties' distribution agreement. Id. The plaintiff in J.J. Ryan, like the plaintiff in the present action, asserted that "because these separately negotiated agreements [the purchase orders, compensation letters and security agreements] have no arbitration clause, disputes involving them are not referable to arbitration.

The district court disagreed, finding "upon reference to the distribution agreements and the manner in which the parties conducted their business that the purchase orders, compensation agreements, and security agreements implemented the distribution agreements." Id. at 319. The Fourth Circuit affirmed, concluding that "[t]hese findings are amply supported. Without the ancillary agreements pertaining to the details of actual importation of the affiliates' products, the exclusive distribution agreements would be largely illusory." Id. Thus, the Court concluded that the district court had properly referred each of the causes of action at issue to arbitration. Id. at 319-20; see also Homestake Lead Co. v. Doe Run Resources Corp., 282 F. Supp. 2d 1131, 1142 (N.D. Cal. 2003) ("An arbitration clause does not govern a dispute based on a subsequent agreement or contract that has no connection to the prior agreement requiring arbitration. Courts have also held that 'where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. In the instant action, however, the arbitration clause is broad, and the subject matter of the dispute, while the immediate focus of a subsequent agreement (the 1997 Agreement), is certainly germane to the Partnership Agreement." (citations omitted)).

Similar to the distribution agreements in J.J. Ryan, the Agreement in the present action would be illusory without the purchase orders that are expressly contemplated by the Agreement. The Purchase Orders implemented the Agreement; see, e.g., Agreement ¶ 6; and plaintiff's claim of breach of the Purchase Orders, as was the case in J.J. Ryan, arises from the operation of the Agreement and should be arbitrated.

## II. THE PARTIES HAVE ENTERED INTO A VALID AND ENFORCEABLE ARBITRATION AGREEMENT.

Plaintiff's claim that the arbitration clause at issue is not valid or binding is similarly unavailing. (Opp. Mem. at 11) Indeed, plaintiff's unsupported assertion that the forum selection/consent to jurisdiction/attorneys' fees clause contained in the Agreement conflicts with and nullifies the arbitration clause (Opp. Mem. at 11-13), conflicts with even the precedent cited by the plaintiff itself. Personal Security & Safety Sys., Inc. v. Motorola, Inc., 297 F.3d 388, 390 (5th Cir. 2002) ("We further hold that a forum selection clause in the stock purchase agreement does not operate to preclude arbitration of claims arising out of that agreement.") (Opp. Mem. at 9)

It is a basic tenet of contract construction that in construing a contract, each part of it must be taken into account and given effect if possible and that an interpretation should not be given to one part of a contract that will annul another part of it. See Restatement (Second) of Contracts, § 203(a) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect ...."); see also Rubery v. Downing Corp., 760 A.2d 945, 947 (R.I. 2000) ("A well-settled rule of contract interpretation is that 'in determining whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning.'").

In applying this principle, courts have consistently held that forum selection/consent to jurisdiction clauses are complementary to arbitration clauses and the existence of both does not give rise to conflicting contractual provisions or create any ambiguity. Thus, in Personal Security & Safety Sys., Inc., 297 F.3d at 395-96, the contract at issue contained both an arbitration provision and a forum selection clause that stated: "This agreement shall be governed by and construed in accordance with the laws of the State of Texas. Any suit or proceeding brought hereunder shall be subject to the exclusive jurisdiction of the courts located in Texas." The court rejected the argument that these clauses were in conflict and operated to nullify the arbitration provision, construing the forum selection clause to mean that "the parties must litigate in Texas courts only those disputes that are not subject to arbitration – for example, a suit to challenge the validity or application of the arbitration clause or an action to enforce an arbitration award."

Similarly, in Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co., No. 3:07-CV-00580, 2007 U.S. Dist. LEXIS 75259, at *17-*18 (M.D. Pa. Oct. 10, 2007), the Court construed a consent to jurisdiction clause and arbitration clause as complementary to one another, concluding that "[t]he mandatory arbitration provision does not completely eliminate the possibility that the parties may additionally rely upon the courts. For example, the parties may need to file an action to compel or enforce arbitration. Additionally, if the parties utilize the exception in the arbitration provision, they can mutually agree to resolve their issues in court." (citing cases). See also Bank Julius Baer & Co. v. Waxfield Ltd., 424 F.3d 278, 284 (2d Cir. 2005) ("[W]e 'cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration.'").

In the present action, the parties' consent to jurisdiction and forum selection clauses must be read to complement the arbitration provision in the parties' agreement. The existence of an attorneys' fees provision (which expressly contemplates arbitration) does not alter this analysis. That the parties recognized there may be situations in which litigation may be necessary or appropriate (for example to confirm an arbitration award) does not conflict with or render ambiguous or unenforceable their agreement to submit to arbitration any claim or controversy arising from the operation of the Agreement. Capewell has established the existence of a valid and enforceable arbitration clause and therefore the claims asserted by CTI should be referred to arbitration.

## III. CONCLUSION

For the reasons set forth herein and in Capewell's Opening Memorandum, this Court should compel CTI to arbitrate its claims against Capewell and stay litigation of CTI's claims against Capewell in this action until such arbitration proceeding is concluded.

DEFENDANT,
CAPEWELL COMPONENTS CO., LLC
By Its Attorneys

/s/ Brooks Magratten
Brooks Magratten, Esq., #3585
Gordon P. Cleary, Esq., #1948
VETTER & WHITE
20 Washington Place
Providence, RI 02903
Phone: (401) 421-3060
Facsimile: (401) 272-6803
bmagratten@vetterandwhite.com
gcleary@vetterandwhite.com

Charles L. Howard
SHIPMAN & GOODWIN LLP
One Constitution Plaza
Hartford, CT 06103
Phone: (860) 251-5000
Facsimile: (860) 251-5319
Email: choward@goodwin.com

Dated: June 18, 2008

## CERTIFICATION OF SERVICE

TO:

Peter J. Brockmann, Esq.
Brockman & Associates, Ltd.
77 Narragansett Avenue
Jamestown, RI 02835

I hereby certify that I electronically filed this Reply Memorandum in Further Support of Combined Motion to Compel Arbitration And Stay Litigation on June 1, 2008. The Memorandum is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/ Brooks Magratten